**Alexander F. CANONICA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 95–437 C.

United States Court of Federal Claims.

July 29, 1998.

---

Alexander F. Canonica, Newtown Square, PA, pro se.

Hillary Stern, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen and James M. Kinsella, Washington, DC, for defendant.

## OPINION and ORDER

TURNER, Judge.

Plaintiff, a retired member of the Air Force's Selected Reserve,[1] alleges that an Air Force mandatory, age-based retirement program applied to him is unlawful. This case stands on defendant's motion filed November 6, 1995 to dismiss the case for lack of subject-matter jurisdiction and/or for failure to state a claim upon which relief can be granted.[2] We conclude that, on one ground or another, defendant's motion must be granted with respect to each aspect of plaintiff's claim.

### I

Effective as of January 1, 1989, the Air Force established by regulation a mandatory retirement program called Enlisted High Year Tenure (HYT). The regulation, applicable to members of the Air Force Reserve (AFR), states that HYT

limits participation in the Selected Reserve to a total of 33 years creditable service for military pay for all selected Reserve enlisted members of the USAFR, unless otherwise selected for retention beyond HYT.... [E]ach member will have an

---

1. The "Selected Reserve" is a category within the Air Force Reserve comprised of units and individuals in the Ready Reserve who are required to participate in inactive duty training and in annual training on active duty. Def. Resp. (8/28/96) at 3.

2. Plaintiff filed this civil action without counsel. Recognizing that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers," we construe *pro se* complaints liberally and will dismiss a *pro se* complaint for failure to state a claim only if it appears " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' ...." *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

HYT date (HYTD) of the first day of the month following the member's pay date plus 33 years or age 60, whichever occurs first.

AF Reg. 35–41, Vol. 5, Sec. A(1)(b) (Sept. 25, 1992) (Def.Resp. (8/28/96), Att. 3). The regulation contained a potential basis for extending one's HYTD: "Members with a pay date [i.e., initial duty date] in 1957 or later may request a waiver of HYTD and, if approved, have their [Tour Completion Date (TCD)] extended to the normal TCD for their [Statutory Tour] or adjusted HYTD, whichever occurs first." AF Reg. 35–41, Vol. 5, Sec. A(2)(b)(2) (Sept. 25, 1992) (Def.Resp. (8/28/96), Art. 3).

HYT was established "to improve grade ratios, ensure sustained promotion opportunity for lower graded enlisted personnel, and increase readiness by providing a force fit for the rigors of war." AFRES 301515Z DEC 88 MSG, DP/317/88, Sec. 1 (Def. Mot. to Dismiss, App. 2a). Under HYT, enlisted personnel who reach their HYTD must retire to the Individual Ready Reserve or the Retired Reserve, or be discharged. HYTD Waiver Consideration Process (Feb. 19, 1992) (Def. Mot. to Dismiss, App. 9c).

**II**

The following is not disputed. On August 9, 1991, plaintiff reenlisted in the Air Force Reserve by signing a standard, six-year reenlistment agreement. Def. Resp. (8/28/96), Att. 2; Order (7/23/98). Less than a year into his term of enlistment, plaintiff was notified that pursuant to HYT he must retire by June 30, 1993, the day preceding his HYTD.

On May 6, 1992, the Air Force informed plaintiff that he was "eligible to be considered for a one time, up to a 3 year waiver of [his] HYTD." Letter from Lynn K. Delaroi, CMSgt, USAFR, to MSgt Alexander Canonica (May 6, 1992) (Def. Mot. to Dismiss, App. 3). On May 21, 1992, plaintiff applied for the waiver. Endorsement by Alexander Canoni-

ca to 514 SPTG/DPMAQ, McGuire AFB (May 21, 1992) (Def. Mot. to Dismiss, App. 3). On August 14, 1992, plaintiff's request for waiver was denied. Endorsement by Joseph A. McNeil, Colonel, USAFR, to 514 MSSQ/DPMAQ (Aug. 14, 1992) (Def. Mot. to Dismiss, App. 5). Later that year, plaintiff was informed that he "must be reassigned to the Retired Reserve to be effective on or before HYTD, or be reassigned to the Individual Ready Reserve (if eligible) on or before HYTD, or be separated (discharged) on or before your HYTD." Letter from Robert J. Winner, Commander, USAFR, to MSgt Alexander Canonica (Nov. 15, 1992) (Def. Mot. to Dismiss, App. 5b).

Pursuant to HYT requirements, on March 31, 1993, plaintiff applied for transfer to the Retired Reserve. HYTD Waiver Consideration Process (Feb. 19, 1992) & Application for Transfer to the Retired Reserve (March 31, 1993) (Def. Mot. to Dismiss, App. 9c, 6). His application was granted, and he was "assigned to the Retired Reserve and placed on the USAF Reserve Retired List" on June 30, 1993, the day preceding his HYTD. Letter from Thomas A. Ridenour, Deputy Director, Directorate of Personnel, to MSgt Alexander F. Canonica (April 7, 1993) (Def. Mot. to Dismiss, App. 10).

On July 3, 1995, plaintiff initiated this civil action alleging unlawfulness of the HYT regulation in general and as applied to him; plaintiff asserts entitlement to back pay and benefits as well as reinstatement in the Selected Reserve as a result of having been unlawfully forced to retire from the Air Force Selected Reserve. Compl. at 1–3.

**III**

█ As a threshold matter, defendant asserts that the court lacks subject-matter jurisdiction of this entire civil action because plaintiff voluntarily resigned.[3] Def. Mot. to Dismiss at 2–4.

---

3. Defendant cites *Sammt v. United States*, 780 F.2d 31, 33 (Fed.Cir.1985) in support of its position that in spite of well-pleaded allegations that a discharge or retirement was involuntary, the court lacks subject-matter jurisdiction of an unlawful discharge claim if, in the course of proceedings, it is determined that the discharge was

in fact voluntary. Although phrased as a jurisdictional decision, *Sammt* really established a rule of substantive law that the exercise of an option to retire from the military is not tendered involuntary by the accurate knowledge of eminent imposition of a less desirable alternative. *Bell v. United States*, 23 Cl.Ct. 73, 76 (1991). *See*

Under the Tucker Act, 28 U.S.C. § 1491(a), this court has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." In this case, plaintiff can invoke his right to pay as a member of the Air Force. *See* 37 U.S.C. §§ 204(a) & 206(a). Plaintiff's right to pay can serve as a basis for Tucker Act jurisdiction so long as plaintiff alleges that his retirement was involuntary and unlawful. *See Spruill v. Merit Sys. Protection Bd.,* 978 F.2d 679, 688–89 (Fed.Cir.1992). Plaintiff does allege that his retirement was involuntary and that it violated military regulations, statutes, and the Constitution. Compl. at 1–3. Because plaintiff has included the requisite allegations, the court has subject-matter jurisdiction. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Spruill,* 978 F.2d at 686; *Total Medical Management, Inc. v. United States,* 29 Fed.Cl. 296, 299 (1993), *rev'd on other grounds,* 104 F.3d 1314 (Fed.Cir.1997).

Despite this, defendant asserts that because it can prove that plaintiff's resignation was in fact voluntary, Def. Mot. to Dismiss at 2–4, we do not have jurisdiction of the case. However, in our view, the issue whether or not plaintiff voluntarily retired is a merits issue, not a jurisdictional one. *Spruill,* 978 F.2d at 688–89. *But see Adkins v. United States,* 68 F.3d at 1317, 1321 (Fed.Cir.1995); *Sammt v. United States,* 780 F.2d 31, 33 (Fed.Cir.1985). We do agree, however, that if plaintiff's retirement was voluntary (even if it resulted from a choice among undesirable alternatives), he has no legal basis to challenge his retirement, and we would have no occasion to address whether the retirement and transfer to the Retired Reserve was unlawful.

The facts are not in dispute. Pursuant to HYT, the Air Force required that plaintiff retire or be discharged by June 30, 1993. Plaintiff had no choice regarding *whether* he would separated from the Selected Reserve. However, plaintiff was given a choice regarding *how* he could retire. He could retire to the Individual Ready Reserve or the Retired Reserve, or he could be discharged. HYTD Waiver Consideration Process (Feb. 19, 1992) (Def. Mot. to Dismiss, App. 9c). Pursuant to HYT regulations, plaintiff elected assignment to the Retired Reserve. HYTD Waiver Consideration Process (Feb. 19, 1992) & Application for Transfer to the Retired Reserve (March 31, 1993) (Def. Mot. to Dismiss, App. 9c, 6).

Defendant contends that these facts demonstrate that plaintiff *voluntarily* chose reassignment to the Retired Reserve from a variety of alternatives. Def. Mot. to Dismiss (11/6/95) at 3–4. Indeed, it is not disputed that on March 31, 1993, plaintiff requested transfer to the Retired Reserve. Application for Transfer to the Retired Reserve (March 31, 1993) (Def. Mot. to Dismiss, App. 6). Thus, defendant argues, plaintiff voluntarily resigned and therefore is not entitled to back pay or reinstatement. Def. Mot. to Dismiss at 3–4.

Defendant cites *Sammt v. United States,* 780 F.2d 31 (Fed.Cir.1985) to support its contention that plaintiff's retirement was voluntary. Major Sammt was "twice passed over" for promotion and was notified by the Army that "he would be placed on the retired list ... unless he requested voluntary retirement." *Id.* at 31–32. Sammt requested voluntary retirement. *Id.* at 32. In *Sammt,* the court stated:

> Sammt's service records indicate that he retired pursuant to 10 U.S.C. § 3911 (1976), relating to voluntary retirement, not 10 U.S.C. §§ 3303(d), 3913 (1976) (repealed 1980), relating to involuntary retirement. Further the actual date of Sammt's retirement was October 31, 1977, not the mandatory date of December 1, 1977.

*Id.* at 33. Because of this, the Federal Circuit held that Sammt's retirement was voluntary.

*Sammt* is distinguishable from plaintiff's situation in one critical aspect. Unlike Major Sammt, plaintiff retired in the precise way the mandatory provisions of HYT required; he did not retire pursuant to another statute

*generally Spruill v. Merit Sys. Protection Bd.,* 978    F.2d 679, 688–89 (Fed.Cir.1992).

or regulation or to avoid a discharge with negative implications.

HYT is a mandatory separation program which allowed three methods of separation. Plaintiff had no choice concerning whether the regulation would apply to him and compel his separation. He sought an extension of his HYTD, potentially available under the HYT regulation, but it was denied. Plaintiff unwillingly retired pursuant to that program. To say that plaintiff's selection of one of the three options under the mandatory HYT regulation made his retirement *voluntary* would be a corruption of language. We conclude that his retirement was involuntary. Because plaintiff's retirement was involuntary, we consider whether it was also unlawful.

## IV

Plaintiff asserts five separate grounds for relief.

First, plaintiff asserts that the Air Force's HYT program breached his reenlistment agreement. Specifically, plaintiff contends that when he reenlisted in the Air Force Reserve in 1991, he was entitled to serve a six-year term and that HYT forced him to retire, violating the terms of his reenlistment agreement. Compl. at 1, 3. Second, plaintiff alleges that at the time of his retirement, the Air Force breached its duty to fully inform a service member subject to HYT of his retirement options. Compl. at 3. Plaintiff alleges that he was not informed that the "Air National Guard does not have a restriction on the number of years served or [a HYT] program." *Id.* Third, plaintiff asserts that his mandatory retirement amounted to age-based discrimination in violation of Title VII of the Civil Rights Act.[4] Fourth, plaintiff asserts that HYT was improperly applied because the Air Force (1) miscalculated the number of years of service applicable to his HYTD determination, (2) failed to apply the program within 33 years of his first pay date and (3) failed to certify that he served 33 years. Compl. at 2. Finally, plaintiff asserts that rights guaranteed by the Due Process

Clause of the Fifth Amendment were violated in the course of his mandatory retirement from the Selected Reserve. Compl. at 2; Pl. Obj. (1/5/96) at 2–3; Pl. Obj. (3/19/96) at 2.

We address these grounds in turn and, with respect to each, consider defendant's position that, with respect to each suggested basis for relief, either the court lacks subject-matter jurisdiction or plaintiff fails to state a claim on which relief can be granted.

## V

### A.  Alleged breach of contract.

Plaintiff argues that his reenlistment agreement was an employment contract entitling him to six years of service with the Air Force Reserve and that HYT breached the agreement. Compl. at 1, 3. Defendant argues that this court cannot evaluate plaintiff's claims under "ordinary contract principles" because plaintiff's status in the military is "defined by statute and regulation." Def. Mot. to Dismiss at 5.

▮ A service member may challenge an action taken by the military on the basis that it breaches or violates his enlistment agreement. *See, e.g., United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Grulke v. United States,* 228 Ct.Cl. 720, 722–25, 1981 WL 21465 (1981). However, statutes and military regulations in effect when the agreement was made are incorporated into every enlistment agreement. *See, e.g., Jackson v. United States,* 216 Ct.Cl. 25, 573 F.2d 1189, 1194 (1978). For this reason, a service member may not argue that military regulations or statutes do not apply to him because of the terms of his enlistment agreement, nor may a service member argue that statutes or regulations enacted after the enlistment agreement do not apply.

▮ Further, plaintiff's reenlistment document informed him that the agreement was limited by all laws and regulations in existence and all future laws or regulations. In Section B, paragraph 8, the fundamental re-

---

4. Plaintiff refers to the "Equal Opportunity Amendment." Compl. at 2. We assume that plaintiff intends to refer to the "Equal Opportunity Act of 1972" which amended Title VII of the Civil Rights Act to prohibit the federal government from engaging in several kinds of employment discrimination. 42 U.S.C. § 2000e–16.

enlistment provision, there is stated: "The additional details of my reenlistment are in Section C...." Section C of the document, appearing on the reverse of the first page, is entitled "*Partial* Statement of Existing United States Laws." (Emphasis added.) Paragraph 9 of Section C includes:

> FOR ALL ... REENLISTEES: Many laws, regulations, and military customs will govern my conduct.... The following statements ... explain some of the present laws affecting the Armed Forces which I cannot change but which Congress can change at any time.
>
> a.... As a member of the Armed Forces of the United States, I will be:
>
> . . . .
>
> (2) *Subject to separation during* or at the end of *my enlistment.*
>
> . . . .
>
> b. Laws and regulations that govern military personnel may change without notice to me. Such changes may effect my status, pay, allowances, benefits, and responsibilities as a member of the Armed Forces **REGARDLESS** of the provisions of this enlistment/reenlistment document.

DD Form 4/1 Reverse, May 88, ¶¶ 9, 9(a)(2) & 9(b) (emphasis added), Order (7/23/98). Thus, plaintiff was on notice that his reenlistment was subject to statutes and military regulations not contained in the reenlistment document.

We acknowledge an inconsistency between the face of plaintiff's reenlistment agreement, which stated that plaintiff "was reenlisting in the United States **AIR FORCE RESERVE** ... for **SIX (6)** years," and his HYT release date applicable under then-existing regulations. Reenlistment Agreement (Aug. 9, 1991) (Def.Resp. (8/28/96), Att. 2a; Order (7/23/98)). However, we are also sensitive to the fact that an enlisted person's service is controlled by numerous statutes and regulations too lengthy and complex to be conveniently set out in an enlistment agreement form applicable to a variety of circumstances.

Even though plaintiff apparently was not aware that he was subject to then-existing age-based service restrictions, the restrictions were applicable to the terms of his reenlistment. For this reason, to the extent that plaintiff's complaint is based on alleged breach of his 1991 reenlistment agreement, it fails to state a claim for which relief can be granted.

**B. Alleged breach of implied duty.**

■ Plaintiff alleges that at the time of his retirement, the Air Force breached its implied duty to fully inform a service member subject to HYT of his retirement options. Compl. at 3. Specifically, plaintiff alleges that he was not informed that the "Air National Guard does not have a restriction on the number of years served or [a HYT] program." *Id.* Even assuming that plaintiff was eligible for service in the Air National Guard, we know of no express or implied duty on the part of the Air Force to notify service members of all possible retirement options and plaintiff has not cited any authority for this proposition. Clearly, plaintiff was advised of the three options available to him under the HYT program. We conclude that to the extent the complaint alleges breach of any implied duty to advise of retirement options or opportunities, it fails to state a claim upon which relief can be granted.

**C. Alleged age-based discrimination.**

■ Plaintiff argues that HYT is unlawful because it discriminates against him on the basis of his age in violation of Title VII of the Civil Rights Act.[5] Title VII of the Civil Rights Act, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16, prohibits the federal government from discriminating on the basis of "race, color, religion, sex, or national origin." Title VII does not prohibit discrimination on the basis of age. Even if Title VII prohibited age discrimination, Title VII does not apply to military personnel. *See, e.g., Roper v. Department of the Army,* 832 F.2d 247, 247–48 (2d Cir.1987); *Gonzalez v. Department of the Army,* 718 F.2d 926, 927–29 (9th Cir.

---

**5.** Plaintiff seeks damages for "[v]iolation of [his] civil rights [and] ... any other damages allowed under the Civil Rights Act." Compl. at 3.

1983). Even if Title VII prohibited age discrimination and applied to military personnel, this court does not have jurisdiction over Title VII claims as jurisdiction rests exclusively with the federal district courts. 42 U.S.C. § 2000e–5(f)(3) and –16(c). *See also Jones v. United States*, 17 Cl.Ct. 78, 82–83 (1989).

■ The Age Discrimination in Employment Act (ADEA) does prohibit the federal government from discriminating on the basis of age. 29 U.S.C. § 633a. However, even if plaintiff intended to invoke the protection of this statute, it would not provide a remedy because the ADEA does not apply to military personnel. *See Kawitt v. United States*, 842 F.2d 951, 953–54 (7th Cir.1988). Additionally, even if the ADEA did apply to soldiers in the military, this court does not have jurisdiction over actions brought under the ADEA; exclusive jurisdiction rests with federal district courts. 29 U.S.C. § 633a(c). *See also Dixon v. United States*, 17 Cl.Ct. 73, 77 (1989).

The purpose of HYT is, in part, "to ... increase readiness by providing a force fit for the rigors of war." AFRES 301515Z DEC 88 MSG, DP/317/88, Sec. 1 (Def. Mot. to Dismiss, App. 2a). There can be no question that the military has a legitimate need to maintain a ready and fit force. Thus, the issue is whether HYT is rationally related to this legitimate purpose.

Under HYT, enlisted personnel who accumulate 33 years of service before age 60 must retire to the Individual Ready Reserve or the Retired Reserve, or be discharged. HYTD Waiver Consideration Process (Feb. 19, 1992) (Def. Mot. to Dismiss, App. 9c). Courts have consistently held that age-based retirement programs can be rationally related to a goal of employee fitness. *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) (foreign service officers); *Murgia*, 427 U.S. 307, 96 S.Ct. 2562 (state police); *Riggin v. Office of Senate Fair Employment Practices*, 61 F.3d 1563 (Fed.Cir. 1995) (capitol police); *Spain v. Ball*, 928 F.2d 61 (2d Cir.1991) (naval officers). We likewise conclude that this age-based retirement program is rationally related to the legitimate purpose of maintaining a fit and ready military force.

We conclude that to the extent that the complaint relies on Title VII or the ADEA, this court lacks jurisdiction to address the claims and, alternatively, the complaint fails to state a claim upon which relief can be granted.

### D. Alleged misapplication of HYT regulations.

Finally, plaintiff argues that the HYT program was improperly applied to him in three respects.

■ First, plaintiff asserts that the controlling regulation was applied in violation of its own terms. In essence, plaintiff challenges the Air Force's method of calculating length of creditable service permitted prior to mandatory retirement under the program. According to plaintiff, the years served prior to his reenlistment in 1991 should not be included in computing his HYTD. Compl. at 2. Under plaintiff's interpretation, he would be entitled to serve 31 more years in the Reserves.

Plaintiff's argument that years of service prior to reenlistment in 1991 should not be used in computing his HYTD has no merit. The HYT regulation provides that "participation in the Selected Reserve" shall be limited "to a *total* of 33 years ... for all selected Reserve enlisted members of the USAFR, unless otherwise selected for retention beyond HYT." AF Reg. 35–41, Vol. 5, Sec. A(1)(b) (Sept. 25, 1992) (emphasis added) (Def.Resp. (8/28/96), Att. 3). Plainly, the regulation was properly applied to plaintiff in accordance with its clear terms.

■ Second, plaintiff contends that because the Air Force has "not certified that plaintiff does indeed have 33 years of service" the program cannot be applied against him "until [he] receives a certification that [he] has 33 years of service." Compl. at 2. We reject this argument because there is no certification requirement prescribed by HYT and because it is not disputed that plaintiff served in excess of 33 years. Compl. at 2.

■ Plaintiff's third contention is that defendant failed to execute the HYT program

in a timely manner. Plaintiff argues that HYT was applied too late because he served beyond 33 years—the time used to calculate his HYTD under the program. Compl. at 2. He argues that the military has no right to enforce HYT once his proper HYTD passes. We know of no authority to support plaintiff's argument that there are such time limits on the Air Force's right to apply regulations to its personnel. We find plaintiff's position in this regard to be meritless.

We conclude that with respect to all of the alleged defects in the implementation of HYT, plaintiff has failed to state a claim for which relief can be granted.

### E. Alleged violation of Due Process.

■ Plaintiff alleges that the HYT regulation was applied to him in violation of constitutional guarantees of due process. Pl. Obj. (1/5/96) at 2; Pl. Obj. (3/19/96) at 2. Defendant argues that we cannot consider this assertion because the Due Process Clause of the Fifth Amendment to the Constitution is not money-mandating, see, e.g., Mullenberg v. United States, 857 F.2d 770, 773 (Fed.Cir.1988), and, consequently the court lacks jurisdiction of any claim based thereon.

While we agree that the Due Process Clause, standing alone, is not money-mandating, we nonetheless have jurisdiction over this aspect of plaintiff's cause of action based on his statutory right to pay and because plaintiff's mandatory retirement would be unlawful if the absence of related procedures violated the Constitution. Holley v. United States, 124 F.3d 1462, 1467 (1997) ("Claimants in the Court of Federal Claims have the right to raise issues based on asserted procedural violations, whether violative of the Constitution or of statute or regulation, to support their claims for monetary relief.").

■ Persons are entitled to due process before they can be deprived of property or liberty. U.S. Const, amend. V. Courts have held that an enlisted member of the armed forces does not have a property interest in his employment because he may be discharged "as prescribed by the Secretary" of his service. 10 U.S.C. § 1169. See, e.g., Guerra v. Scruggs, 942 F.2d 270, 278 (4th Cir.1991). However, courts have held that an enlisted member of the armed forces has a liberty interest in his employment.

■ This liberty interest prevents the military from discharging a service member without due process—but only in cases where a "stigma" would attach to the discharge. See, e.g., Holley, 124 F.3d at 1469–70; Vierrether v. United States, 27 Fed.Cl. 357, 364–65 (1992), aff'd without op., 6 F.3d 786 (Fed. Cir.1993), cert. denied, 511 U.S. 1030, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994). In this case, plaintiff was forced to retire based on the number of years he served. Because there is no stigma attached to this type of mandatory retirement, plaintiff's due process rights were not implicated.

Further, due process rights are typically fulfilled by notice of the government act and an opportunity to respond before or after the act. Plaintiff received notice of the policy by various memoranda, which informed him that he was subject to HYT and that he would be unable to complete his enlistment term because of his years of previous service. Plaintiff was given the opportunity to seek a waiver of HYT, and he did so, albeit unsuccessfully. Also, plaintiff was not harmed by the lack of a hearing or other formal response provision, because he does not dispute the basis of his mandatory retirement—that he had served over 33 years in the Air Force Reserve.

We conclude that plaintiff's allegation that his constitutional due process rights were violated in the course of his mandatory discharge fails to state a claim on which relief can be granted.

### VI

For the forgoing reasons, defendant's motion filed November 6, 1995 to dismiss this civil action is GRANTED.

Accordingly, it is ORDERED that judgment shall be entered in favor of defendant dismissing the complaint, in part for lack of jurisdiction and in part for failure to state a

claim upon which relief can be granted. Each party shall bear its own costs.