**Randy DUFFY, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

No. 92 C 8489.

United States District Court, N.D. Illinois, E.D.

Nov. 4, 1993.

Randy Duffy, pro se.

Charles E. Ex, Asst. U.S. Atty., for U.S.

## *MEMORANDUM OPINION AND ORDER*

SHADUR, Senior District Judge.

In this action Randy Duffy ("Duffy") has launched his second effort to challenge the propriety of his resignation and discharge from the United States Air Force Reserves ("Reserves"). In Duffy's first lawsuit (Case No. 87 C 10826 in this District Court), this Court's then colleague Honorable Prentice Marshall held that the United States had not established as a matter of law that Duffy had resigned voluntarily, but Judge Marshall nonetheless dismissed all ten counts in Duffy's then-existing complaint on various differing grounds. One of those ten claims, the one that was set forth in Duffy's first count, was dismissed because Duffy had not exhausted his available intramilitary administrative remedies.

Judge Marshall's judgment of total dismissal was affirmed by our Court of Appeals something over a year ago (966 F.2d 307 (7th Cir.1992)), albeit "by a slightly different route" than that traveled by Judge Marshall (*id.* at 314). In connection with the first count of Duffy's original complaint, though, the Court of Appeals concurred with Judge Marshall's determination that Duffy must first exhaust his administrative remedies before bringing that claim into court. En route to that conclusion, it quoted (966 F.2d at 311)

the Supreme Court's decision in *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972):

> The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies.

Duffy then applied for administrative relief before the Air Force Board for Correction of Military Records ("Board"). On October 21, 1992 the Board ruled against Duffy, primarily on the ground that he had voluntarily sought a discharge in lieu of court-martial. Although Duffy's current lawsuit asserts a number of grounds for invoking judicial relief, this Court has previously determined in an oral ruling that the only potential for subject matter jurisdiction here is judicial review of the Board's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

■■■ There is a reason for inserting the qualifier "potential" into the last sentence: If Duffy's resignation were indeed voluntary, this Court would then lack subject matter jurisdiction over his action for reinstatement or backpay (*Sammt v. United States*, 780 F.2d 31, 32–33 (Fed.Cir.1985)). Accordingly this Court has posed the question to the parties whether Judge Marshall's expression of views on the voluntariness issue (an issue not argued by the United States before our Court of Appeals) was law of the case.

At this point the litigants have briefed the law-of-the-case question. Fully four reasons negate the application of that doctrine here:

1. Judge Marshall really did not hold that Duffy's resignation was not voluntary. Although he did rule (dealing, it will be remembered, with a motion to dismiss Duffy's complaint) that the United States had not established a voluntary resignation as a matter of law, all that Judge Marshall said—given the absence of proof at that threshold stage—was this (slip op. at 22) (emphasis added):

> Duffy alleges, and defense do not *yet* dispute, that [Reserves Major Reino] Lanto [the Staff Judge Advocate who had been involved in handling Duffy's situation] imposed the terms of Duffy's resignation.

2. In any event, law of the case does not come into play because this Court's subject matter jurisdiction is now at issue. As *Christianson v. Colt Indus. Operating Corp.*, 798 F.2d 1051, 1056 (7th Cir.1986) (numerous citations omitted) has said:

> Indeed, there is authority for the proposition that the issue of subject matter jurisdiction is not constrained by the law of the case principles. Even the Fifth Circuit, which has developed a rigorous law of the case doctrine, routinely allows for the reconsideration of jurisdictional rulings.

And where the issue has been addressed not by a superior court (such as the Court of Appeals) but by a court of coordinate jurisdiction, the non-binding nature of that court's rulings really follows a fortiori (*id.*)

3. Quite apart from those reasons, the very nature of Judge Marshall's decision did not bring law of the case into play. As *Trustees of Ind. Univ. v. Aetna Casualty & Sur. Co.*, 920 F.2d 429, 435 (7th Cir. 1990) put it:

> We could find no case ... in which the law of the case has been applied to bind a district court to a factual statement made by the court in the course of denying a summary judgment motion, when subsequent proceedings following directly on that denial bring the factual statement into doubt. And for good reason: so long as the factual issue has not been brought to judgment, the parties should be free in the course of the same proceeding to offer evidence on the issue.

And that is analogous to the posture here, where Judge Marshall did not—but the Board later did—take evidence on and resolve the issue of voluntariness, thus creating the administrative record ("AR") now before this Court for review.

4. Finally, law of the case is a discretionary prudential doctrine in any event, not a limitation on judicial power. See e.g., such cases as *Christianson*, 798 F.2d at 1056; *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir.1982); *Cameo Con-*

*valescent Center, Inc. v. Percy,* 800 F.2d 108, 110 (7th Cir.1986).

Accordingly this Court is free to review the issue of voluntariness of Duffy's resignation, unconstrained by the law of the case doctrine.[1]

■ This Court's review of the Board's action under the APA on that score is limited to a determination of whether the Board's actions were arbitrary, capricious or in bad faith, or were unsupported by substantial evidence, or were contrary to law, regulations or mandatory published procedure (see 5 U.S.C. § 706(2)(A) and the definitive decision in this area of law, *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam)). It is not for this Court to substitute its judgment for that of the Board, and in scrutinizing that judgment this Court must indulge "the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith" (*Sanders v. United States,* 594 F.2d 804, 813, 219 Ct.Cl. 285 (1979) (en banc)). In that process the record is that made before the Board and not this Court (*Camp,* 411 U.S. at 142, 93 S.Ct. at 1244), and the burden is placed on Duffy to establish by "cogent and clearly convincing evidence" that the demanding standards set out in the APA and in *Camp* for overturning the Board's decision have been met (*Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986)).

■ Here the Board held squarely against Duffy on the voluntariness issue. It said at AR 6:

Based on this incident, court-martial charges were preferred against him. Applicant, after consulting both civilian and military counsel, elected to be discharged in lieu of trial by court-martial. By making this decision, in our opinion, he declared his conduct render him triable by

court-martial and that he fully understood his rights and options as to the matter. Applicant has provided no evidence that he was coerced into his decision.

That express factual determination was made even without reference to the legal presumption that resignations of governmental employees are voluntary (*Christie v. United States,* 518 F.2d 584, 587, 207 Ct.Cl. 333 (1975), followed in *United States v. Thompson,* 749 F.2d 189, 194 (5th Cir.1984))—a presumption that persists even if a plaintiff is confronted with "a choice of unpleasant alternatives" (*Sammt,* 780 F.2d at 33; *Thompson,* 749 F.2d at 194–95).

To overcome that presumption of voluntariness (let alone the Board's affirmative finding in that respect) by a showing of duress or coercion, a plaintiff must demonstrate (*Christie,* 518 F.2d at 587, again followed in *Thompson,* 749 F.2d at 194):

(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party.

Success in that regard requires the plaintiff to establish all three of those elements, judged by an objective rather than a subjective standard (*Christie,* 518 F.2d at 587; *Thompson,* 749 F.2d at 194).

Duffy has not established even one, let alone all, of those three propositions. As for the first and third of them, Duffy's request for discharge in lieu of his being court-martialed (AR 120) included this statement:

I have been afforded the opportunity to consult with legal counsel. I was counseled by Capt Jeffrey Robb.

And immediately below the request for discharge signed by Duffy, his counsel Captain Robb signed this statement:

---

1. Duffy is wrong in contending that if his call to active duty had assertedly been unauthorized (and was hence illegal), all later actions affecting him—including his request for discharge in lieu of court-martial—would be void. As our Court of Appeals said in affirming Judge Marshall's rejection of Duffy's other claims (966 F.2d at 312):

Duffy's status as a reservist, which unquestionably is a military status, was the sine qua non for his call to active duty, even if that call were illegal.

As was true with respect to those other claims, the question of voluntariness of Duffy's discharge is not affected by the legality or alleged illegality of his call to duty (cf., e.g., *Pitt v. United States,* 420 F.2d 1028, 1032–35, 190 Ct.Cl. 506 (1970)).

The preceding statement by TS GT Randy Duffy was his voluntary decision signed by him after I counseled him fully about:

a. His rights and privileges; and

b. The possible effect of discharge under these circumstances.

Nothing in what Duffy now asserts negates that statement (or the Board's determination to the identical effect) with any degree of persuasiveness. And as for the second proposition that is demanded by the cases as an element of a duress defense, Duffy's arguments establish no more than the existence of a difficult choice—and this opinion has already said *that* is not enough (*Sammt,* 780 F.2d at 33; *Cruz v. Department of the Navy,* 934 F.2d 1240, 1245 (Fed.Cir.1991); *Arneson v. Heckler,* 879 F.2d 393, 396 (8th Cir.1989) and cases cited there).

Accordingly Duffy has not come close to establishing that the Board's decision on the voluntariness issue even approached the level of being arbitrary, capricious, in bad faith, or of not being supported by substantial record evidence. Certainly that determination by the Board could not be characterized as contrary to law, regulation or mandatory published procedure. Hence it must be concluded that Duffy's resignation was indeed voluntary and this Court has no jurisdiction to entertain his action for reinstatement for backpay. This action is dismissed with prejudice.